**E-FILED on**    6/24/05

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAYNE PALMISANO and RICHARD PALMISANO, individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>OLIN CORPORATION, a corporation, STANDARD FUSEE CORPORATION, doing business as ORION SAFETY PRODUCTS, a Delaware corporation, and DOES 1 through 50,<br><br>    Defendants. | No. C-03-01607 RMW<br><br>ORDER GRANTING STANDARD FUSEE CORPORATION'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 117]** |
| AND ALL RELATED CASES | |

    This is a toxic tort case. Four bellwether plaintiffs—(1) Cynthia and Joseph Dalla ("the Dallas"), (2) Robert Wess ("Wess"), (3) Tracy and Craig Smith ("the Smiths"), and (4) Teresa and Antonio Pereira ("the Pereiras")—have asserted causes of action for (1) negligence, (2) negligence *per se*, (3) strict liability for ultra hazardous activity, (4) trespass, (5) private nuisance, (6) public nuisance, (7) intentional and negligent infliction of emotional distress, (8) damages under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq ("CERCLA"), and (9) declaratory relief under CERCLA against defendant Standard Fusee Corporation ("Standard Fusee"). Complaints ¶¶

1, 5-7, 41-44, 52, 72, 77, 88. Standard Fusee seeks summary judgment on plaintiffs' claims.[1]  The court has read the moving and responding papers and considered the arguments of counsel.  For the reasons set forth below, the court grants Standard Fusee's motion.

## I. BACKGROUND

In 1956, Olin Corporation ("Olin") began making flares at 425 Tenant Avenue in Morgan Hill, California ("the plant").[2]  In 1988, Standard Fusee purchased Olin's flare-making operations.  Casto Decl. Ex. I.  Standard Fusee leased a portion of the plant from Olin and made flares there until 1995.  *Id*. Ex. J.  It is undisputed that Standard Fusee used potassium perchlorate ("perchlorate"), a potentially dangerous chemical, in its flare-making operations.  Cowart Report, Casto Decl. Ex. B, at 3.  Flare-making involves creating a "fire mix" by combining perchlorate with other chemicals and pouring it into cardboard tubes.  *Id*.  In 1996, Standard Fusee closed the plant under the supervision of the Santa Clara Country Central Fire Protection District ("the fire department").  *Id*. Ex. K.  In 2000, a potential purchaser of the plant detected perchlorate in the groundwater under the plant.  *Id*. Ex. O.  Nearby residents soon detected perchlorate in their drinking water.  This litigation ensued.  In 2005, the California Regional Water Control Board ("the Board") issued a Cleanup or Abatement Order ("COA") that declared that Olin and "Standard Fusee . . . discharged or permitted the discharge of [perchlorate]."  *Id*. Ex. A.

## II. ANALYSIS

**A.     Summary Judgment**

Summary judgment is proper when there are no genuine issues as to any material fact and the movant is entitled judgment as a matter of law.  *See* Fed. R. Civ. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  This court must regard as true the non-moving party's evidence, if supported by affidavits or other evidentiary material.  *Id*. at 324.  Where the moving party does not bear the burden of proof on an issue at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case."  *Id*.

---

[1] This case involves two groups of plaintiffs, referred to by the names of their counsel.  The "Rapazzini Graham" plaintiffs oppose Standard Fusee's motion.  However, the "Alexander" plaintiffs have filed a notice of non-opposition to Standard Fusee's motion.  Casto Decl. Ex. B.

[2] The facts of this case are described in more detail in this court's order on Olin and plaintiffs' cross-motions for summary judgment.

ORDER GRANTING STANDARD FUSEE CORPORATION'S MOTION FOR SUMMARY JUDGMENT—C-03-01607-RMW DOH
2

at 325. If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### B.   **Plaintiffs' Trespass Claims**

As discussed in this court's order relating to plaintiffs' and Olin's cross-motions for summary judgment, plaintiffs cannot state a claim for trespass based upon the alleged disposal of perchlorate into groundwater without proof that it caused physical property damage. *See San Diego Gas & Electric Co. v. Sup. Court*, 13 Cal. 4th 893, 935-37 (1996). Further, as discussed below, plaintiffs fail to show that Standard Fusee contributed significantly, if at all, to the alleged presence of perchlorate. Plaintiffs' trespass claims against Standard Fusee thus fail.

### C.   **Plaintiffs' Negligence, Negligence *Per Se*, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress and Strict Liability Claims**

Plaintiffs' negligence, negligence *per se*, and negligent infliction of emotional distress claims require proof that Standard Fusee breached a duty of care and that this breach caused their harm. *See Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996) (negligence cause of action requires plaintiff to show breach of duty and causation); *Traxler v. Varady*, 12 Cal. App. 4th 1321, 1328 (1993) (breach of statute in *negligence per se* claim and causation may be decided as a matter of law "where reasonable minds could not differ as to whether a violation of the regulation actually occurred or whether the violation proximately caused the plaintiff's injuries"); *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 213 (2003) ("the negligent causing of emotional distress is not an independent tort, but the tort of negligence" and thus "[t]he traditional elements of duty, breach of duty, causation, and damages apply") (citation omitted). Similarly, plaintiffs' strict liability and intentional infliction of emotional distress claims require proof of causation. *See Pierce v. Pacific Gas & Electric Co.,* 166 Cal. App. 3d 68, 85 (1985) ("one who undertakes an ultrahazardous activity is liable to every person who is injured as a proximate result of that activity"); *Christensen v. Sup. Ct.*, 54 Cal. 3d 868, 903 (1991) ("[t]he elements of the tort of intentional infliction of emotional distress are: extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

ORDER GRANTING STANDARD FUSEE CORPORATION'S MOTION FOR SUMMARY JUDGMENT—C-03-01607-RMW DOH

1  suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional
2  distress by the defendant's outrageous conduct") (citation omitted).  Standard Fusee correctly argues that
3  plaintiffs cannot raise a genuine issue of material fact as to whether it breached a duty of care, whether any
4  breach of duty caused plaintiffs' harm, or whether it engaged in extreme and outrageous conduct.[3]

5       Plaintiffs place great reliance on the COA as evidence that Standard Fusee discharged perchlorate
6  in the groundwater.  However, the COA is not binding on this court.  *See U.S. v. Utah Const. & Min.*
7  *Co.*, 384 U.S. 394, 422 (1966); *Resolution Trust Corp. v. Rossmoor Corp.,* 34 Cal. App. 4th 93, 106
8  (1995); *Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster*, 52 Cal. App. 4th
9  1165, 1221 (1997).  In addition, the probative value of the COA is exceedingly low because "land owners
10 and tenants may be characterized as dischargers despite the lack of any direct action causing a discharge."
11 *In the Matter of U.S. Cellulose*, Order No. WQ92-04, 1992 WL 88723 *2 (Cal. St. Wat. Res. Bd.
12 Mar. 19, 1992).  This is particularly true because the COA is devoid of any analysis explicitly linking
13 Standard Fusee to the perchrlorate.  Indeed, the COA states only that "perchorlate contamination is
14 suspected to originate" from the evaporation pond, on-site burning of waste, and accidental spills.  COA at
15 1.  Yet it is undisputed that Standard Fusee used neither the evaporation pond nor burned waste on-site.
16 Suekawa & Lee Decls. at ¶¶ 6-7.

17      Other than the COA, plaintiffs have virtually no evidence that tends to show that Standard Fusee
18 accidentally discharged perchlorate.  This case involves at least two criteria that involve expert testimony:
19 (1) Standard Fusee's perchlorate handling practices and (2) whether perchlorate leached into the
20 groundwater during Standard Fusee's tenancy.  *See Sanderson v. International Flavors and*
21 *Fragrances, Inc.*, 950 F.Supp. 981, 985 (C.D. Cal. 1996) (expert testimony required when issues are
22 "beyond the experience of laymen").  David Bauer, plaintiffs' expert regarding the flare production process
23 and waste management procedures testified that he has no opinion about Standard Fusee's operations:

> Q: Now, I'd like to ask you just a few questions about Standard Fusee.
> A: Go ahead.
> Q: Now, as I understand it your report has expressed no opinions whatsoever regarding the practices of Standard Fusee Corporation; isn't that correct?
> A: That is correct.

---

28    [3] In addition, for reasons set forth in the court's order on Olin and plaintiffs' cross motions for summary judgment, plaintiffs cannot prove that strict liability is warranted.

ORDER GRANTING STANDARD FUSEE CORPORATION'S MOTION FOR SUMMARY JUDGMENT—C-03-01607-RMW
DOH

Bauer Depo., Casto Decl. Ex. C, at 226:16-22. Moreover, Standard Fusee's expert hydrologist, Steven Larson, stated without contradiction that accidental releases of perchlorate after Standard Fusee took over operations at the plant "would not produce detectable concentrations of perchlroate in groundwater" due to soil conditions and the average rate of perchlroate migration. Larson Report, Casto Decl. Ex. D at 7.[4] Thus, plaintiffs lack proof on vital aspects of their case.

No reasonable jury could conclude that circumstantial evidence is sufficient to support plaintiffs' claims. Plaintiffs argue that, in 1996, when Standard Fusee stopped using the plant, an internal Olin memorandum documented that there were "open drums" and "dry powder" at the site. Pearce Decl. Ex. B. However, the memorandum also states that "it does not appear that we are dealing with any hazardous waste . . . ." *Id*. Plaintiffs also cite another memorandum that states "there is still quite a bit of cleanup and housekeeping needed in the 'fire mix' manufacturing area" and "the overall housekeeping should be upgraded" because "[t]here is 'stuff' all over." *Id*. Exs. C, D. These oblique references to "stuff" and "housekeeping" are simply too vague to support a reasonable inference that Standard Fusee handled perchlorate carelessly. Finally, plaintiffs note that Paul Ghiradelli, a former Olin and Standard Fusee employee, stated that he "noticed a great deal of fire mix dust under the equipment and on the walls" when he helped close the plant in 1996. *Id*. Ex. E. Ghiradell, however, did not claim to notice fire mix dust on the ground, where it could leach into the groundwater. In addition, Standard Fusee's perchlorate-handling expert James Cowart stated that the company took elaborate measures to clean the property after it closed. Cowart Report, Casto Decl. Ex. F, at ¶ 9.[5] Finally, Standard Fusee offered ample evidence that it

---

[4] Plaintiffs claim that Standard Fusee's experts' testimony is inadmissible because it is not based on first-hand knowledge. However, "[u]nlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).

[5] Plaintiffs also cite a newspaper article in which Olin spokesperson Richard McClure ("McClure") stated that perchlorate most likely "seep[ed] right through cracks in the floors." Pearce Decl. Ex. H at 62. Plaintiffs offer McClure's statement to prove the truth of what it asserts: that perchlorate could have leaked despite Standard Fusee's best efforts. As such, it is inadmissible hearsay under Federal Rule of Evidence 802. Even if an exception applied to McClure's statement—though it is unlikely that a statement by an Olin employee could be a party admission against Standard Fusee—the article itself is also inadmissible hearsay.

exercised due care.[6] Because plaintiffs have failed to offer more than a "mere scintilla" of evidence that Standard Fusee was careless or discharged perchlorate, Standard Fusee is entitled to summary judgment on plaintiffs' negligence, negligence *per se*, emotional distress, and strict liability claims.

### D.   Plaintiffs' Nuisance Claims

Plaintiffs argue that Standard Fusee is liable for nuisance because "it maintained the nuisance and allowed the nuisance to persist by failing to cleanup and abate the nuisance." Opp. Mot Summ. J. at 9:23-24. However, liability for "maintaining" a nuisance generally requires "knowledge of the contamination." *Hendler v. United States*, 38 Fed. Cl. 611, 616 (1997). It is undisputed that perchlorate was not discovered at the plant until August 2000, over three years after Standard Fusee's lease ended. Two more years passed before plaintiffs detected perchlorate in their groundwater. Finally, although plaintiffs assert that "liability for a public nuisance may result from the failure to act," Opp. Mot. Summ. J. at 10:12-13, plaintiffs cannot prove they suffered the requisite "special injury" to state a claim for public nuisance. *See* Cal Civ. Code § 3493 (to state a cause of action for public nuisance requires damages "specially injurious to [plaintiff], but not otherwise").

### E.   Plaintiffs' CERCLA Claims

Plaintiffs claim that Standard Fusee is responsible for their response costs under CERCLA, 42 U.S.C. § 9607.[7] To establish a *prima facie* cost recovery claim under CERCLA, plaintiffs must prove that (1) a release or threatened release has occurred at a "facility"; (2) the release or threatened release caused the incurrence of plaintiffs' response costs; (3) the response costs were necessary and consistent with the national contingency plan ("NCP"); and (4) that the defendant is a potentially responsible party ("PRP"). *See Casaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1059 (C.D. Cal. 2003).

Plaintiffs argue that Standard Fusee is a PRP because they are a "person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances

---

[6] This evidence included declarations from two former employees, Yoshio Suekawa and Anne Lee, that stated that Olin regularly audited Standard Fusee's operations and that Standard Fusee disposed of waste off-site. Casto Decl. Exs. G, H at ¶¶ 9, 13.

[7] Plaintiffs seek recovery for their bottled water expenses and well-testing costs. Both are permissible response costs. *See* 42 U.S.C. 9601(23), (24).

were disposed of." 42 U.S.C. § 9607(a)(2). However, the Ninth Circuit has held that "gradual passive migration of contamination through the soil that allegedly took place during [d]efendants' . . . ownership [i]s not a . . . 'disposal' within the meaning of § 9607(a)(2)." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 879 (9th Cir. 2001). As noted above, plaintiffs have no other proof that Standard Fusee engaged in the "disposal" of perchlorate and make no other argument as to why Standard Fusee is a PRP. Thus, Standard Fusee is entitled to summary judgment on plaintiffs' CERCLA claims.

## III. ORDER

For the foregoing reasons, the court grants Standard Fusee's motion for summary judgment.

DATED:      6/24/05                              /s/ Ronald M. Whyte

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Colin L. Pearce | clpearce@duanemorris.com |
| M. Elizabeth Graham | meg@rapazzinigraham.com |
| Richard M. Franco | rmfranco@duanemorris.com |
| Mark P. Rapazzini | mpr@rapazzinigraham.com |
| Timothy W. Moppin | twmoppin@duanemorris.com |
| Matthew Kliszewski | mkkliszewski@duanemorris.com |

**Counsel for Olin:**

| | |
|---|---|
| Randall C. Creech | rcreech@sjlegal.com |
| Keith M. Casto | keith.casto@sdma.com |
| Adam E. Miller | adam.miller@husch.com |
| Carol A. Rutter | carol.rutter@husch.com |

**Counsel for Standard Fusee:**

| | |
|---|---|
| Earl L. Hagstrom | earl.hagstrom@sdma.com |
| Gary A. Sloboda | gary.sloboda@sdma.com |

**Counsel for Interested Party:**

Richard Alexander        amostek@alexanderlaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**    6/24/05                                    DOH
                                                **Chambers of Judge Whyte**

ORDER GRANTING STANDARD FUSEE CORPORATION'S MOTION FOR SUMMARY JUDGMENT—C-03-01607-RMW DOH